**David Paul REYNOLDS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–90–01088–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 11, 1994.

Stephen A. Doggett, Fred M. Felcman, Richmond, for appellant.

Robert Huttash, Matthew W. Paul, Austin, for appellee.

Before MURPHY, SEARS and DRAUGHN, JJ.

**OPINION ON MOTION
FOR REHEARING**

DRAUGHN, Justice.

After granting appellant's motion for rehearing, we withdraw our prior opinion on

remand in *Reynolds v. State,* 1993 WL 340898 No. B14–90–01088–CR (Tex.App.— Houston [14th Dist.] 1993, n.w.h.) (not designated for publication), and substitute the following opinion.

Appellant was convicted by a jury of driving while intoxicated and sentenced to two years probation and a $200 fine. This court affirmed the conviction. *Reynolds v. State,* 822 S.W.2d 341 (Tex.App.—Houston [14th Dist.] 1992, writ granted). Appellant then filed a petition for discretionary review with the Court of Criminal Appeals, contending that this court erred in upholding the trial court's failure to instruct the jury on the legality of appellant's stop. The Court of Criminal Appeals granted appellant's petition and reversed and remanded this case to our court for a harm analysis pursuant to TEX. R.APP.P. 81(b). We reluctantly reverse and remand based on the Court of Criminal Appeals' preemptive harm analysis in its opinion.

In November of 1989, appellant was stopped by a Texas Department of Public Safety officer for driving at a high rate of speed. While questioning appellant, the officer smelled a strong odor of alcohol on his breath. When appellant subsequently failed several field sobriety tests, the officer placed him under arrest and took him to the Fort Bend County jail, where additional sobriety tests and a breath test were administered with appellant's consent. These tests were admitted as evidence at trial.

In his first point of error, appellant contends that the trial court erred in failing to instruct the jury on the legality of the initial stop for the alleged traffic violation. At trial, appellant requested a jury charge on the legality of the stop, which the trial court refused. In support of its argument, appellant relies on Article 38.23 of the Texas Code of Criminal Procedure, which provides in part:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained. TEX.CODE CRIM.PROC.ANN. art. 38.23 (Vernon 1979).

In the present case, the officer testified that he observed the vehicle driven by appellant speeding. He also testified that his radar gun registered appellant's speed at 68 miles per hour, and he pulled the vehicle over. The officer further testified that he advised appellant that he pulled him over for his speeding and asked him if there was a medical reason for his speed. The officer also testified that appellant told him that he didn't "think he was going that fast," he didn't "realize he was going that fast," and he was going to contest the speeding ticket. In fact, appellant asked and the officer allowed him to see the radar reflecting his speed of 68 m.p.h. In this regard, the appellant offered no evidence at trial contesting the accuracy of the radar gun. Appellant's brother, a passenger in the vehicle, also testified that he did not think his brother had been speeding and that his brother did not think he had been speeding.

The Court of Criminal Appeals held that appellant was entitled to his requested instruction on the legality of the stop. *Reynolds v. State,* 848 S.W.2d 148, 149 (Tex.Crim. App.1993). The Court of Criminal Appeals concluded that appellant's statements about his perception of his speed were sufficient to raise an issue that appellant was not speeding in fact. *Id.* The Court of Criminal Appeals reasoned that if the jurors had believed that appellant was not speeding, they would then be forced to conclude that the officer's testimony was either mistaken or incredible. *Id.* The Court of Criminal Appeals stated that although a conclusion that the officer was mistaken would not affect the legitimacy of his stopping appellant, a conclusion that he was lying would. *Id.* Reduced to its basics, the Court of Criminal Appeals held that the jury could have believed that the officer was lying when he said his radar

showed that appellant's vehicle was traveling at 68 m.p.h.

█ When conflicting evidence raises an issue regarding the right to stop a driver, a court is required to include a requested charge on this issue. *Stone v. State,* 703 S.W.2d 652, 655 (Tex.Crim.App.1986). Failure to do so when requested can be reversible error. *Id.*

In this case, the Court of Criminal Appeals concluded that the record contained conflicting testimony regarding the circumstances surrounding the stop of appellant's vehicle. *Reynolds,* 848 S.W.2d at 149. The Court of Criminal Appeals found that the conflicting testimony challenged the credibility of the officer. *Id.* The Court of Criminal Appeals reasoned that if the jury had believed that the officer had lied about what his radar reflected, he would not have been justified in stopping appellant's vehicle. *Id.* Consequently, the Court of Criminal Appeals concluded that the trial court committed reversible error by failing to submit an instruction to the jury on the legality of the stop by the officer. *Id.*

The Court of Criminal Appeals further opined that if the trial court had given an instruction under Article 38.23(a), the jury could have believed appellant and his witness and found that the stop was illegal because appellant was not speeding. *Id.* In turn, the jury would also have had to believe that the officer was lying when he said he clocked appellant at 68 m.p.h. on his radar. The Court of Criminal Appeals concluded as a result, the jury would have been instructed to disregard all evidence obtained from the illegal stop. *Id.* The evidence included the field sobriety test, the video sobriety test, and the intoxilyzer test. The results of the intoxilyzer test showed a .20 reading, which was twice the legal limit for intoxication. In essence, the Court of Criminal Appeals conducted what appears to be its own harm analysis based on the underlying assumption that the jury was entitled to believe that the officer was lying about what his radar gun reflected, simply because appellant said he didn't think "he was going that fast."

In spite of the apparent harm analysis set out in its opinion, the Court of Criminal Appeals remanded this case to this court for us to conduct a somewhat redundant harm analysis. As an intermediate appellate court, we are thus locked into their harm analysis. However, we feel compelled to state that if this case were presented to us for an unrestricted harm analysis on first impression, we would find that the so-called conflicting "evidence," at best, raised an issue as to whether the officer was mistaken, which the Court of Criminal Appeals concedes would not have invalidated the stop. Without the presumed harm analysis set out in the Court of Criminal Appeals' opinion, we would have found no harm because, in our opinion, no rational trier of fact based on the evidence in this record could have found that the officer was lying simply because appellant stated that he didn't "think he was going that fast." We note that appellant did not state he didn't think he was not *speeding.* We also note it was the officer who candidly testified as to what the appellant said, and it was the officer who voluntarily allowed the appellant to view his radar screen. To justify an illegal stop finding, the jury would have to believe that the officer deliberately manipulated his screen to falsely justify stopping appellant for speeding. All this based on appellant's unsupported roadside statement. In our opinion, it is an incredible stretch of logic and common sense.

█ Nonetheless, in view of the Court of Criminal Appeals' opinion, which conducted a gratuitous harm analysis, we, as an intermediate appellate court, have no choice but to defer to that analysis and, reluctantly, find that there was harm to appellant based on the Court of Criminal Appeals' reasoning. We would, however, urge the Court of Criminal Appeals to revisit this issue and reconsider whether such unsupported, flimsy statements by alleged speeders in the context of an officer's otherwise exemplary behavior should automatically constitute sufficient legal evidence to warrant a jury finding that the officer lied about or intentionally falsified what his radar screen reflected.

Based solely on the Court of Criminal Appeals' preemptive harm analysis, we reverse

the judgment and remand the cause to the trial court for a new trial.